**MPC RESTAURANT CORP. and Hardwicke's Plum Ltd. d/b/a Maxwell's Plum, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Nos. 638, 869, Dockets 72–1892, 72–2029.**

United States Court of Appeals, Second Circuit.

Argued May 3, 1973.

Decided July 5, 1973.

76

Martin F. Payson, New York City (G. Harrison Darby, Philip S. Mortenson, Jackson, Lewis, Schnitzler & Krupman, New York City, on the brief), for petitioner.

William R. Stewart, Washington, D. C. (John D. Burgoyne, Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., on the brief), for respondent.

Before FRIENDLY and HAYS, Circuit Judges, and JAMESON,* District Judge.

HAYS, Circuit Judge:

Petitioner, MPC Restaurant Corp. and Hardwicke's Plum Ltd., a joint venture, doing business as "Maxwell's Plum," a restaurant in New York City, has filed a petition to review and set aside a decision and order of the National Labor Relations Board. The order directs the employer to cease and desist from cer-

tain unfair labor practices, to reinstate four discharged employees and to reimburse them for any loss of pay suffered by them as a result of what the Board determined to be their unlawful discharge, to post appropriate notices and to bargain with Union Local 89 upon request. The Board has filed a cross-application for enforcement of its order. We grant the Board's cross-application for enforcement of its order and deny the employer's petition for review.

I. *The Facts*

"Maxwell's Plum" is a restaurant located in New York City. It employs approximately 100 to 120 kitchen and dining room employees. In September of 1970, the Chefs, Cooks, Pastry Cooks and Assistants Union, Local 89, Hotel and Restaurant Employees and Bartenders International Union of America, AFL–CIO, began organizational efforts among the kitchen employees of Maxwell's Plum. At the same time Dining Room Employees Local 1, affiliated with the Hotel and Restaurant Employees and Bartenders International Union, AFL–CIO, undertook to organize Maxwell's Plum's dining room employees.

On October 22, 1970, a petition for election was filed with the National Labor Relations Board by Local 89. The petition stated that a demand for recognition and bargaining had been made upon the employer the previous day and that the employer had not acceded to the demand. At the time of the Union's demand for recognition, it claimed that it had authorization cards from almost two-thirds of the kitchen employees.

Meanwhile, Local 1 had continued its organizing campaign among the restaurant's waiters and, as the Board found, the employer had responded to those efforts by discharging several employees active in the union, by threatening the waiters with reprisals if they persisted in the organization campaign, and by promising them benefits if they ceased.

* Of the United States District Court for the District of Montana, sitting by designation.

In its representation petition Local 89 sought to represent a unit limited to "kitchen" employees. The employer argued that a unit confined to kitchen employees was an inappropriate bargaining unit in that it covered less than one-third of its total work force. A representation hearing was stayed when Local 89 filed charges alleging violations of Sections 8(a)(1), (3) and (5) of the National Labor Relations Act.

Local 1 had already filed charges against the company alleging violations of Sections 8(a)(1) and (3) of the Act. However, Local 1 did not at that time seek recognition as the bargaining agent for any of Maxwell's Plum's employees.

## II. *The Board's Order*

The complaints of the two unions were consolidated for trial. The allegation that the employer had violated Section 8(a)(5) with respect to Local 89 again gave rise to the issue of the appropriateness of the bargaining unit for which Local 89 had made a bargaining demand. The trial examiner found that a unit limited to kitchen employees was appropriate for bargaining purposes and that the employer had violated Sections 8(a)(1), (3) and (5) of the Act.

The Board affirmed the trial examiner's findings of fact and conclusions of law with minor modifications. The Board found that the employer had violated Section 8(a)(1) of the Act by coercively interrogating its employees about their union activities, by threatening employees with discharge if they persisted in their union activities, and by promising and granting pay increases and hospitalization and health benefits to its employees as inducements to persuade them to reject the union's organizing efforts. The Board held that the company had violated Section 8(a)(3) and (1) by discharging certain employees because of their union activities and that it had violated Section 8(a)(5) and (2) by refusing to recognize and bargain with Local 89 as the exclusive representative of the company's kitchen employees who, the Board found in agreement with the trial examiner, constituted an appropriate bargaining unit. The Board determined that a bargaining order was an appropriate remedy for the company's unfair labor practices.

### A. *The Unfair Labor Practices.*

There is ample evidence in the record to support the Board's finding that the company interfered with, restrained, and coerced its employees in violation of Section 8(a)(1) of the Act. In addition to surveillance and interrogation, see Bourne v. NLRB, 332 F.2d 47 (2d Cir. 1964), there were inducements in the form of increases in pay and other changes in working conditions which were all part of the company's effort to cripple the union's organization drive. See NLRB v. Exchange Parts Co., 375 U.S. 405, 409, 84 S.Ct. 457, 11 L.Ed.2d 435 (1964). Although there was some evidence that the grant of improved hospitalization and medical care insurance might not have been aimed at stifling union efforts, there is enough support in the record to afford substantial evidence that this, like the wage increase, was an effort to defeat the union's attempts to organize the restaurant.

The evidence as to the incidents surrounding the discharges of certain employees was somewhat conflicting. In such a situation, it is for the trial examiner to resolve the issues of credibility and the examiner specifically addressed himself to that issue. We are not empowered to reject his findings on credibility. See NLRB v. A. & S. Electronic Die Corp., 423 F.2d 218, 220 (2d Cir.), cert. denied, 400 U.S. 833, 91 S.Ct. 66, 27 L.Ed.2d 65 (1970).

### B. *The Appropriate Bargaining Unit.*

In seeking to set aside the order of the Board, the company places great em-

phasis on its contention that the Board erred in determining that a bargaining unit composed of only kitchen employees was appropriate. The company claims that the trial examiner based his determination on this issue primarily, or even entirely, on what he thought to be the pattern of bargaining in the New York City metropolitan area. It is argued that this in itself was error and, moreover, citing the quashing of its subpoenas by the trial examiner, the employer claims that the trial examiner could not properly give weight to the area pattern of bargaining and at the same time prevent the employer from showing that the pattern was not what the examiner thought it to be.

As this court said in Wheeler-Van Label Co. v. NLRB, 408 F.2d 613, 616 (2d Cir.), cert. denied, 396 U.S. 834, 90 S.Ct. 90, 24 L.Ed.2d 84 (1969):

"[T]here can be no dispute that the Board has considerable leeway in exercising its judgment under Section 9(b) of the Act . . . as to the appropriateness of a given unit. A unit finding by the Board 'involves of necessity a large measure of informed discretion,' Packard Motor Car Co. v. NLRB, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947), and, where it is supported by substantial evidence, will not be reversed 'in the absence of "arbitrary or capricious exercise of administrative discretion," ' Empire State Sugar Co. v. NLRB, 401 F.2d 559, 562 (2d Cir. 1968)."

The employer contends that the trial examiner relied primarily, and erroneously, on the case of Toffenetti Restaurant Co., 133 N.L.R.B. 640 (1961) for his conclusion that there was an area bargaining pattern of considering kitchen employees separately as an appropri-ate bargaining unit. However, the *Toffenetti* case, upon which the trial examiner did heavily rely, did not hinge entirely on the area bargaining pattern. It also mentioned other factors relevant to the determination of an appropriate unit such as the separate work functions of kitchen employees, their infrequent contact with restaurant clientele, and the lack of interchange between kitchen employees and other restaurant employees. In referring to *Toffenetti* the trial examiner was referring to those other factors as well as the area bargaining pattern. His report shows that he gave consideration to those other factors.

■ In any event, the emphasis placed on "area practice" by the employer is unwarranted. Area practice is only one factor—and surely not the most important factor—in determining the propriety of a unit. The trial examiner took into consideration, for example, the employees' "community of interests" which is a more important factor than area pattern.

■■ The unit need not be the *only* appropriate unit nor even the most appropriate unit. It need only be *an* appropriate unit. See Wheeler-Van Label Co. v. NLRB, supra, 408 F.2d at 617.[1]

■ The employer makes the procedural objection that it was denied due process by the trial examiner's refusal to permit the presentation of certain evidence regarding the issue of the appropriate bargaining unit. At the request of the employer, the trial examiner issued subpoenas which were served on Local 89, Local 1 and eight other unions which represent restaurant employees in New York City. Each subpoena requested the named union to produce cop-

---

1. Petitioner also contends that the Board's unit determination cannot stand because "controlling weight" was given to the "extent of organization" of Local 89 contrary to the commands of Section 9(c)(5) of the Act. We disagree. The Act does not forbid *consideration* of extent of organi-zation and there is no indication that the Board's finding was based wholly or even principally on the extent of union organization. See NLRB v. Metropolitan Life Ins. Co., 380 U.S. 438, 442, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965).

ies of their existing collective bargaining agreements which the employer contended would establish the industry bargaining pattern in the New York City metropolitan area. Upon motion of the various unions, the trial examiner quashed the subpoenas directed to the eight non-party unions and permitted only partial compliance with respect to those issued to Locals 89 and 1. The ruling was well within the examiner's power to impose practical limitations on the amount of evidence to be considered, especially in the light of the abundant testimony that the contracts produced were typical of the whole volume of such contracts,[2] and the employer's failure to bring forward any substantial contrary evidence, although this would have been available from other sources.

### C. *The Bargaining Order.*[3]

 Under the doctrine of NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), the determination of whether unfair labor practices are of such a nature as to warrant the issuance of a bargaining order is for the Board and not the courts. 395 U.S. at 612, fn. 32, 89 S.Ct. 1918. The *Gissel* order is appropriate where serious unfair labor practices have been committed which "interfere with the election process and tend to preclude the holding of a fair election," 395 U.S. at 594, 89 S.Ct. at 1930.

."If the Board finds that the possibility of erasing the effects of past practices and of ensuring a fair election . . . by the use of traditional remedies, though present, is slight and that the employee sentiment once expressed through cards would, on balance, be better protected by a bargaining order, then such an order should issue. . . ." 395 U.S. at 614–615, 89 S.Ct. at 1940.

This is such a situation.

 The company argues that the Board erred in basing its bargaining order on unfair labor practices occurring with respect to Local 1 as distinguished from Local 89. We find no error. The discharge of a Local 1 union organizer certainly could be thought to have an adverse effect on the rights of other employees of the same establishment although these others were subject to the potential jurisdiction of another local.[4]

We grant the Board's cross-application for enforcement and we deny petitioner's request that we set aside the order.

2. Local 89 submitted 110 of approximately 750 contracts. In addition, the employer examined 147 of an additional 250 contracts offered and not submitted. Local 1 submitted 30 of 700 agreements as representative—none of which included kitchen employees in the bargaining unit.

3. The employer argues that, in issuing its bargaining order, the Board erroneously relied upon unfair labor practices—including the discharge of an employee—which occurred prior to the filing of the representation petition. The employer cites in support of its contention a Board rule which provides that the date that the petition is filed is the "cut-off" date. See Ideal Elec. and Mfg. Co., 134 N.L.R.B. 1275, 1278 (1961); Flight Safety, Inc., 197 N.L.R.B. No. 40, fn. 1 (1972). However, the rule appears to apply only to objections to an election and not to the issuance of a bargaining order.

4. The company further charges that Local 89 did not have valid authorization cards when it claimed a majority of the kitchen employees as adherents. It bases this claim on the fact that although the union possessed 22 valid cards in a unit of 35 employees, the cards were undated when signed and hence, petitioner argues, invalid. The Board has found these conditions sufficient for validity. See, e. g., Henry Spen & Co., Inc., 150 N.L.R.B. 138 (1964).

The cards were signed by the employees before they were dated. The employees clearly intended to designate Local 89 as their bargaining agent by signing the cards.