**Elise Riddel, et al. v. Department of Employment Security**

[436 A.2d 1086]

No. 463-79

Present: Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.

Opinion Filed September 1, 1981

*James S. Suskin,* Montpelier, and *Gary H. Barnes, Michael S. Finch,* and *George T. Faris, IV,* of *Downs, Rachlin & Martin,* South Burlington, for Plaintiffs.

*Matthew R. Gould,* Montpelier, for Defendant.

Underwood, J. The claimants had been employed as teachers' aides by the Barre City School System during the academic year 1978–79. At the close of the academic year, they each applied for unemployment benefits for the period between the end of the academic year 1978–79 and the beginning of the academic year 1979–80. Each claim was denied on the ground that the claimants were performing services in an instructional capacity for an educational institution, with reasonable assurance of being rehired in the upcoming academic year. They were therefore found to be ineligible for benefits pursuant to 21 V.S.A. § 1343(d).

The claimants limit their appeal to two issues. They contend that because they were paraprofessional teachers' aides, the activities they performed for the Barre City School System did not constitute services in an instructional capacity within the meaning of 21 V.S.A. § 1343(d). They further argue that the Board's interpretation of 21 V.S.A. § 1343(d) denied them equal protection within the meaning of the Fourteenth Amendment of the United States Constitution and Chapter I, Article 7 of the Vermont Constitution.

Since the claimants' eligibility for unemployment benefits hinges upon the services they actually performed, rather than the title or description of their jobs, a close examination of the facts is important.

All of the claimants, as teachers' aides, were classified as certified paraprofessionals by the Vermont Department of Education when they were hired by the Barre City School

System for the academic year 1978–79. They were hired to assist certified professional teachers, and to work directly under their supervision.

Teachers' aides worked a six and one-half hour day for which they were paid between $2.80 and $3.65 per hour. They received no paid vacations, holidays, or health insurance benefits. Although each aide's duties varied slightly from those of the others, ten of the fifteen claimants spent over half of their time working directly with students. Primarily, their duties involved administration and correction of tests, tutoring of students in mathematics, reading and other subjects, and working with students through the use of films, tapes and work books.

Aides were not permitted to prepare instructional programs, or to supervise homerooms, lunch periods, or study halls. These duties were reserved exclusively for the professional teachers. Aides were not directly responsible for the preparation of student evaluations either, although some assisted the supervising teacher in the preparation of such evaluations. Some attended conferences between parents, students and teachers.

By a letter dated June 6, 1979, the claimants were advised that positions as tutorial aides in the Barre City School System would be available to them for the academic year 1979–80. The letter indicated that such aides would be paid according to the master agreement entered into between the school board and the Barre City Schools Educational Support Personnel Association, of which the claimants were members.

The pertinent provisions of 21 V.S.A. § 1343(d) provide as follows:

> [W]ith respect to service performed after December 31, 1977, in an instructional, research, or principal administrative capacity for an educational institution, benefits shall not be paid on such services for any week of unemployment commencing during the period between two successive academic years . . . to any individual if such individual performs such services in the first of such academic years . . . and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years . . . .

The claimants concede that each had a contract, or reasonable assurance of similar employment, with the Barre City School System for the academic year 1979–80. They therefore waive their appeal as to that issue.

We must first determine from the facts whether the claimants were performing services in an instructional capacity for the Barre City School System during the academic year 1978–79. Unfortunately, the Vermont Unemployment Compensation Act (the Act) (21 V.S.A. §§ 1301–1426) does not define the phrase "instructional capacity," and the legislative history of the enactment of 21 V.S.A. § 1343(d) gives us no clue as to the legislative intent.

■ If the claimants are exempt from the provisions of 21 V.S.A. § 1343(d), then they are entitled to benefits for the summer recess period, as are school bus drivers, cafeteria attendants, crossing guards, etc. 21 V.S.A. § 1301(6)(A)(ix). As a general proposition, the underlying purpose of the Act is to alleviate the economic disability and distress which results from involuntary unemployment. No person, therefore, should be excluded from its benefits unless the Act itself, in so many words, has demonstrated an intent to create such an exclusion. *In re Hatch,* 130 Vt. 248, 257, 290 A.2d 180, 185–86 (1972).

The claimants, however, are entitled to benefits only if the legislature did not intend that they be lumped together with professional teachers, who are concededly performing services in an instructional capacity for an educational institution, within the meaning of 21 V.S.A. § 1343(d).

■ The phrase "instructional capacity" is not an ambiguous one. It means, "in the role of a teacher." Where the meaning of a statute is plain and unambiguous, there is no necessity for construction, and the statute must be enforced according to its terms. *Quero* v. *Vermont State Tax Department,* 131 Vt. 326, 328, 306 A.2d 684, 686 (1973). Every fact brought out below supports the contention that the claimants, as teachers' aides, were performing services in the role of teachers for the Barre City School System.

Even the Vermont Department of Education recognizes that teachers' aides operate essentially as teachers, that is, in an

instructional capacity. Paragraph VII of its State Board Policy for Certification provides as follows:

> Educational personnel in the public schools hired to assist professionally certified personnel in the *teaching-learning process* shall be certified as professionals by the State Department of Education.
>
> . . . .
>
> As the more common term 'aides' implies, paraprofessionals are *assistants to professional teachers*. When a paraprofessional works with a small group, the pupils are those with whom the professional teacher has regular contact and responsibility. Paraprofessionals may *perform specific teaching tasks*, for which they have been trained. They are to be assigned to and under the supervision of a certified professional teacher. Support personnel such as clerks and secretaries not directly involved in the *instructional program* would not be eligible for paraprofessional certification. (Emphasis supplied.)

The claimants would have us find an ambiguity where none exists. They point to the legislative intent behind the federal counterpart of 21 V.S.A. § 1343 (d), contending that Congress intended to exclude teachers only, and not teachers' aides. The claimants insist that the sponsor of 21 V.S.A. § 1343 (d) intended to conform this section of the Unemployment Compensation Act to federal law.

The claimants theorize that since professional teachers are salaried, whereas teachers' aides are paid by the hour, Congress excluded them from unemployment compensation benefits over the summer in order to prevent "double-dipping." The claimants point out that when 21 V.S.A. § 1343 (d) is read with the intent of its federal counterpart in mind, it becomes clear that they are not covered, because they are paid on an hourly basis, and there is therefore no danger of "double-dipping."

We have already rejected that argument in *Gilbert v. Department of Employment Security*, 139 Vt. 24, 421 A.2d 1295 (1980). In that case, the plaintiff was a tutor working for the St. Albans School District during the academic year 1978–79. He had been assured of a similar job for the next academic year. Although he was paid only for the hours dur-

ing which he actually tutored students, we held that he was performing services in an instructional capacity, and that therefore, as a result of 21 V.S.A. § 1343 (d), he was ineligible for summer benefits.

We conclude the statutory language of 21 V.S.A. § 1343 (d) is clear and unambiguous and that the claimants, as teachers' aides, are persons serving in an instructional capacity for an educational institution with a reasonable assurance that they will perform a similar service for the same educational institution in the next academic year.

If the provisions of 21 V.S.A. § 1343 (d) seem unfair or unjust, the remedy is to change the law itself. This can be effected by the legislature and should not be done by judicial fiat under the guise of statutory interpretation. *Donoghue* v. *Smith,* 119 Vt. 259, 267, 126 A.2d 93, 98 (1956).

The claimants' second ground for appeal, namely that the Board's literal interpretation of 21 V.S.A. § 1343 (d) denied them equal protection under both the United States and Vermont Constitutions, was not one of the questions certified on appeal by the Board. The claimants maintain that the interpretation taken by the Board is arbitrary and irrational, and bears no relationship to the Act's legitimate purposes.

■  The claimants appeared pro se at the hearings before the claims examiner, the appeals referee and the Board. It is difficult to determine from the record whether this constitutional issue was raised at any time before the Board. It appears to have been mentioned only once in an argument before the appeals referee by one of the claimants as follows: "We also believe that the application of 21 V.S.A. § 1343 (d) to these teachers' aides results in an arbitrary discriminatory process and denies some of those people equal protection of the law." This Court may, under the authority of V.R.A.P. 2, dispense with the need for a certified question from the Board. In this case, we elect to do so. *Town of Barnet* v. *Central Vermont Public Service Corp.,* 131 Vt. 578, 580, 313 A.2d 392, 393 (1973).

■ ■  Absent a showing of either a suspect classification or an infringement upon a fundamental constitutional right, a statute will not violate the equal protection clause as long as it bears a rational relationship to a legitimate governmen-

tal interest. *Gilbert* v. *Department of Employment Security,* *supra,* 139 Vt. at 26, 421 A.2d at 1296. Its function is to exempt both teachers' aides and teachers from benefits due to their mutual expectation of reemployment in the regular course of the academic year. Since 21 V.S.A. § 1343(d) effectuates this purpose, it serves a legitimate governmental end and does not deny the claimants equal protection.

*Affirmed.*