# Petition of the VSEA, Inc. (Correctional Center Employees)

[471 A.2d 230]

No. 82-178

Present: Billings, C.J., Hill and Gibson, JJ., and Keyser and
Larrow, JJ. (Ret.), Specially Assigned

Opinion Filed December 14, 1983

*Michael R. Zimmerman*, Montpelier, for Plaintiff-Appellee.

*John J. Easton, Jr.*, Attorney General, and *J. Scott Cameron*, Special Assistant Attorney General, Montpelier, for Defendant-Appellant.

**Gibson, J.** Vermont state employees of six community correctional centers seek to form a separate unit for the purposes of collective bargaining. The Vermont State Employees Association, Inc. (VSEA) filed a petition with the Vermont Labor Relations Board (Board) on the employees' behalf. A separate unit of two hundred fifty-six employees of the Department of Corrections, currently included in VSEA's Non-Management and Supervisory Units, was originally proposed. The Board, as mandated by the State Employees Labor Relations Act (SELRA), 3 V.S.A. §§ 901–1007, after hearing, found the proposed unit, with some qualification, to be an appropriate one. The State of Vermont, Department of Corrections (State), filed a timely notice of appeal from the Board's Findings, Opinion and Order. We affirm the Board's determination except for that portion of the order that included 24 correctional facility shift supervisors in the proposed unit.

State employees are currently organized into four bargaining units: Non-Management, Supervisory, Liquor Control and State Police. The unit proposed by VSEA's petition would shift correctional employees from the Supervisory and Non-Management Units to a new Correctional Unit.

The proposed unit has its genesis in attempts by correctional employees to have their unique concerns, arising from

the stressful nature of their prison environment, addressed in negotiations between VSEA and the State. As members of the Non-Management and Supervisory Units, they have not been successful in negotiating and lobbying for such benefits as hazardous duty pay, increased staffing, employee counseling and "stress relief" days. They believe they would achieve their employment goals more effectively as an autonomous unit.

Included in the proposed unit are both "on-line" employees, who work directly with the security and rehabilitation of the prison population, and "non-line" employees, who provide administrative support services to on-line employees.

On-line employees are exposed to constant danger from hostile inmates and experience a great amount of stress which is exacerbated by high turnover, understaffing, mandatory overtime and inadequate training. Non-line employees performing, for instance, secretarial, nursing and clerical services, although not exposed to an equal amount of physical danger and stress, do work in the prison environment, have contact with the prison population, and share the same physical facilities with on-line staff members.

The unit approved by the Board contains approximately two hundred twenty-five on-line and thirty non-line employees, including twenty-four on-line correctional facility shift supervisors whose jobs were designated supervisory after these proceedings began.

The State appeals under 3 V.S.A. § 1003 alleging first that the Board had no authority even to consider the petition. The petition, on its face, included supervisory employees in derogation of 3 V.S.A. § 907. The State argues the Board has no authority to consider a petition containing clearly inappropriate employees and also lacks authority to certify a unit different from the one proposed by the petition. The petition, it believes, should have been summarily dismissed. Second, the State contends the unit, as approved, is inappropriate because it includes both supervisory and non-management employees and, under 3 V.S.A. § 941, the employees included do not share a sufficient community of interest. The State also contends the formation of the group will cause over-fragmentation of units and "an adverse effect either on effec-

tive representation of state employees . . . or upon the efficient operation of state government."

## I.

■■■ By statute, supervisory employees may not be included in a unit together with non-management employees. 3 V.S.A. § 907. We find nothing in SELRA, however, which prohibits the Board from considering a petition which includes employees who are inappropriate as a matter of law. We have not previously addressed this question and have held only that the Board may not alter the composition of a bargaining unit after a bargaining representative has been elected. *In re Liquor Control Department Non-supervisory Employees,* 135 Vt. 623, 625, 383 A.2d 612, 614 (1978).

The Board is a public administrative body and has such "adjudicatory jurisdiction as is conferred on it by statute." *In re Brooks,* 135 Vt. 563, 570, 382 A.2d 204, 208 (1977). SELRA gives the Board authority to approve a collective bargaining unit by finding that the unit is appropriate, *id.* § 927 (a), and that a majority of the employees have voted for organization of the proposed unit. *Id.* § 941 (e). The process of unit determination is instituted by the filing of a petition by an employee, group of employees or a labor organization. *Id.* § 941 (c) (1). The petition is investigated by the Board, and, if unit determination questions arise, a hearing is held. *Id.* § 941 (d) (1).

A collective bargaining unit is defined in SELRA to include all of the employees of an employer or other units "as the *board may determine* are most appropriate." *Id.* § 902(3) (emphasis added). Further, "[t]he board shall decide the unit appropriate . . . in each case and *those employees to be included therein . . . ." Id.* § 927 (a) (emphasis added).

■■■ To follow appellant's view, a petition once filed with the Board would be subject to dismissal if even one inappropriate employee was included. This could result in repeated dismissal and refiling of a petition until, finally, the perfect petition was presented. Such a procedure would not only be an inefficient manner of proceeding but would also fail to give effect to the clear language of § 927. Where the

meaning of a statute is plain and unambiguous, there is no need for construction and it must be enforced according to its terms. *Riddel* v. *Department of Employment Security*, 140 Vt. 82, 86, 436 A.2d 1086, 1088 (1981). Once a petition is filed, "[t]he Board shall decide . . . those employees to be included . . ." in the unit. *Id.* § 927(a). If, after hearing, the Board determines the unit as proposed is inappropriate, it may order the formation of a unit that is an appropriate one under the criteria set forth in 3 V.S.A. § 941(f). It may do this even though the unit deemed appropriate may not correspond precisely to the unit configuration proposed in the petition. The Board did not err when it considered the petition and issued an order authorizing a unit different from the one proposed by VSEA.

## II.

The Board's order included in the unit twenty-four correctional facility shift supervisors who were redesignated as "supervisory" by the Department of Personnel after the filing of the petition and before hearing. 3 V.S.A. § 906. At the time of the Board's order, the Personnel Department had not notified the employees of their redesignations and the right to dispute them. *Id.* As the supervisory designations were not final pursuant to § 906, the Board found these employees to be in "limbo" and "[o]n the existing state of facts" placed them in the proposed correctional unit.

Citing § 907, the State argues the Board committed reversible error when it included the shift supervisors within the Correctional Unit. Section 907 provides that "[e]mployees who are determined to be supervisory employees under the provisions of section 906 of this title shall become members of the supervisory unit." This provision, argues the State, leaves the Board no discretion to place supervisory employees in the correctional unit.

We agree. Although the Board included them in the unit only pending their final designation under § 907, the statute requires all supervisory employees to become members of the Supervisory Unit; we must therefore reverse this portion of the Board's order.

## III.

The heart of appellant's appeal lies in its challenge to the unit under 3 V.S.A. § 941(f) of SELRA.

Section 941(f) provides:

> (f) In determining the appropriateness of a collective bargaining unit the board shall take into consideration but not be limited to the following criteria:
>
> (1) The authority of governmental officials at the unit level to take positive action on matters subject to negotiation.
>
> (2) The similarity or divergence of the interests, needs, and general conditions of employment of the employees to be represented. The board may, in its discretion, require that a separate vote be taken among any particular class or type of employees within a proposed unit to determine specifically if the class or type wishes to be included.
>
> (3) Whether over-fragmentation of units among state employees will result from certification to a degree which is likely to produce an adverse effect either on effective representation of state employees generally, or upon the efficient operation of state government.

The State contends the criteria set forth in §§ 941(f)(2) and 941(f)(3) were not properly applied by the Board to the facts of this case.

Before considering the two criteria, we note the deferential standard of review to be applied. Unit determinations are within the expertise of the Board and are presumed to be "correct, valid and reasonable, with a clear and convincing showing required to overcome the presumption." *International Association of Firefighters Local #2287* v. *City of Montpelier*, 133 Vt. 175, 178, 332 A.2d 795, 797 (1975). Indeed, in persuasive precedent from the private sector of labor relations, the Second Circuit Court of Appeals has stated that "[t]he bargaining unit approved by the Board need not be the *most* appropriate unit, only *an* appropriate unit." *NLRB* v. *Hudson River Aggregates, Inc.*, 639 F.2d 865, 871 (2d Cir.

1981) (citing *MPC Restaurant Corp.* v. *NLRB*, 481 F.2d 75, 78 (2d Cir. 1973)) (emphasis in original).

## A.

Section 941(f)(2) requires the Board to consider whether employees included within a proposed unit share a sufficient community of interest—whether the employees to be included have similar "interests, needs, and general conditions of employment."

The parent agency of the Department of Corrections, the Agency of Human Services, also includes the Departments of Mental Health (Mental Health) and Social and Rehabilitation Services (SRS). Both on-line and non-line employees of all three departments currently belong to the Non-Management Unit. It is the State's position that non-line correctional employees share a greater community of interest with their counterparts in Mental Health, SRS, and the Department of Corrections central office. If the proposed unit is approved, non-line employees would be separated from all other state employees having identical positions and belonging to the Non-Management Unit. The State also contends non-line correctional employees do not share a community of interest with on-line correctional staff members because they do not experience as much danger, fatigue and stress, do not have the same high rate of turnover, and are not forced to work a large amount of overtime.

The State argues as well that non-line workers will be a distinct minority within the unit and will be dominated by the on-line members.

In its order, the Board recognized that "non-line employees perform generally the same functions and work the same hours as their counterparts elsewhere in State government." The Board, however, did not agree that non-line correctional employees share a greater community of interest with other employees of the Non-Management Unit and found the following factors to be determinative.

> [T]hey work in an entirely different environment than those employees. They work in a high-pressure environment where they have contact with incarcerated per-

sons—many considered violent. They share common interests with on-line employees, both being concerned with personal safety and inmate security in an environment where danger rules.

The Board determined that the pervasive atmosphere of the workplace, characterized by violence and stress, gave the non-line correctional employees significant kinship with their on-line colleagues to justify their inclusion together in the proposed unit. We note here that the State's argument that on-line and non-line correctional workers do not share a community of interest is considerably weakened by the fact that on-line and non-line employees are presently grouped together in the Non-Management Unit where the State urges they should remain. If the employees share a sufficient community of interest while in their present unit, we cannot say they will lose that commonality simply by becoming members of a smaller Correctional Unit.

Although the thirty non-line employees do constitute a minority within the new unit and will have less influence than two hundred forty on-line employees, a majority of the non-line employees signed authorizations indicating their wish to be included in the proposed bargaining unit.

We find a sufficient community of interest exists to satisfy § 941(f)(2), and we will not substitute our judgment for that of the Board. *Firefighters of Brattleboro, Vermont, Local #2628* v. *Brattleboro Fire Department*, 138 Vt. 347, 350, 415 A.2d 243, 245 (1980).

### B.

A proposed unit may not result in over-fragmentation "to a degree which is likely to produce an adverse effect either on effective representation of state employees generally, or upon the efficient operation of state government." 3 V.S.A. § 941(f)(3).

There are four collective bargaining units presently in existence: the Supervisory Unit, the Non-Management Unit, a State Police Unit and a Liquor Control Unit. The State opposes the petition for a Correctional Unit because it feels the large Non-Management Unit will be continually "sliced

up on a departmental basis." This phenomenon, it alleges, "cannot fail to have an adverse effect upon the operation of State Government." The adverse effects include the "difficulty of negotiating still more unit agreements," an increase in grievances and unfair labor practice charges, and the resulting increase in costs and expenditure of time associated with their negotiation and litigation. The State also argues the new unit would adversely affect "the effective representation of State employees generally" because a Correctional Unit could, by exercising its veto power, create a whipsaw effect during negotiations.

The collective bargaining agreement negotiated by the State and VSEA consists of a large master agreement covering all employees as well as four supplemental unit agreements. The master contract as well as the four bargaining unit agreements must be ratified by all four bargaining units under VSEA ratification procedure. The State argues the Correctional Unit would have limited power at the bargaining table except for its ability to bring the entire negotiating process to a standstill if its individual goals were not being met. Thus, Correctional Unit employees could effectively stymie the negotiating efforts of all other state employees. Furthermore, if the Correctional Unit receives benefits not shared by the other units, those units will, in turn, refuse ratification of their own contracts in an effort to obtain equal treatment.

The Board found no adverse effect on the efficient operation of state government. In rejecting these arguments, the Board found most effort and expense has been incurred in negotiating the master agreement and the addition of one more unit agreement will not substantially raise negotiating costs or time. As we have noted before, the conclusion that fewer units "would be preferable as a matter of time and expediency falls far short of establishing an adverse effect upon the effective operation of the . . . employer." *International Association of Firefighters, Local #2287* v. *City of Montpelier, supra,* 133 Vt. at 178, 332 A.2d at 797.

The Board also found no reason to believe grievances and litigation would increase as a result of the proposed unit and, in fact, believes such altercations may decrease if working

conditions are improved as the result of successful negotiation.

In addition, no adverse effect on the representation of state employees generally was found; the Board viewed the State's position here as "unfounded." As the Board stated, under the present method of ratifying contracts VSEA would be unlikely to "sacrifice the interests of other employees to those of correctional employees, since the contract has to be 'sold' to all employees." Furthermore, the Board found the creation of a whipsaw effect unlikely because other state employees would not desire the same benefits sought by corrections employees. Hazardous duty pay, a reduction of excessive overtime and stress relief, for example, are benefits arising from the unique correctional environment and are "not the concerns of other State employees."

We note that two departmental units—the Police and Liquor Control Units—are already in existence. No evidence has been presented that these units, similar in concept to the Correctional Unit, have engendered any whipsaw effect or negotiating stalemate.

 We cannot say that the proposed unit is not *an* appropriate one, especially in light of SELRA's directive that "[t]he board shall decide the unit appropriate . . . in order to assure the employees the fullest freedom in exercising the rights guaranteed by this chapter." 3 V.S.A. § 927(a).

*That portion of the Board's order that included supervisory employees in the proposed unit is reversed; in all other respects, the order is affirmed.*