## Grievance of Darwin Merrill

[559 A.2d 651]

No. 86-391

Present: **Allen, C.J., Peck, Gibson and Mahady, JJ., and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed December 16, 1988

Motion for Reargument Denied March 24, 1989

---

*Blais, Cain, Keller & Fowler, Inc.*, Burlington, for Plaintiff-Appellee.

*Jeffrey L. Amestoy, Attorney General,* and *George Brooks, Special Assistant Attorney General,* Montpelier, for Defendant-Appellant.

**Gibson, J.** The State appeals from a decision of the Vermont Labor Relations Board (Board) holding that the State acted without just cause in dismissing Darwin Merrill (grievant), who was employed by the Office of Alcohol and Drug Abuse Programs (OADAP) as the director of a project for Countermeasures Related to Alcohol and Safety on the Highways (CRASH). We affirm.

## I.

Grievant was employed by OADAP as the director of Project CRASH from 1970 until his dismissal on October 5, 1984. The State seems to have had no significant difficulties with grievant's work until a new supervisor became grievant's immediate superior in June of 1981. Whereas previous supervisors engaged in minimal supervision of grievant's work, the new supervisor engaged in a much more direct scrutiny of grievant's activities.

On November 23, 1983, the supervisor issued grievant a written reprimand for: (1) mishandling funds and giving conflicting accounts of the facts thereof in connection with a Chittenden County Bar Association drinking demonstration; (2) retaining a double reimbursement of expenses in connection with a business trip to Detroit; and (3) storing alcohol belonging to the State of Vermont in his own home without an accounting or record of such storage. On April 23, 1984, grievant was placed in a six-

month probationary period due to his continued poor job evaluations. Grievant was specifically put on notice that failure to bring his performance up to a fully satisfactory level during the warning period could result in his dismissal. Grievant's problems persisted, however, throughout the probationary period, and on October 5, 1984, grievant was dismissed for his performance shortcomings.[1]

Grievant appealed his dismissal to the Board. The Board concluded that the deficiencies cited in dismissing grievant did not constitute a substantial shortcoming detrimental to the State's interests, and that the State had abused its discretion by dismissing him. The Board ordered grievant's reinstatement to his position as CRASH program chief with back pay and interest. The State appealed the decision to this Court alleging that: (1) the Board employed an erroneous legal test in determining just cause; (2) the Board erred in determining that grievant's failure to accept supervision was unintentional; (3) the Board substituted its judgment for that of the employer; and (4) the State was prejudiced by the Board's exclusion of certain evidence.

## II.

As a general rule, this Court accords deference to the Board in determinations that lie within the area of its expertise. See *In re VSEA, Inc.,* 143 Vt. 636, 642, 471 A.2d 230, 234 (1983); *In re Carlson,* 140 Vt. 555, 560, 442 A.2d 57, 60 (1982). The issues in

---

[1] The separation performance evaluation outlined the stated reasons for grievant's discharge:

    (a) resistant to revision of the CRASH schools;

    (b) submission of the grant request to the Governor's Highway Safety Program without prior submission to his supervisor and not conforming to OADAP's grant guidelines when submitting the grant request;

    (c) failure to monitor all the CRASH schools;

    (d) submitting the Alcohol Assessment Screening Protocol assignment late and without adequately completing the assignment;

    (e) failure to follow official policy on leave time;

    (f) showing little initiative in looking for ways to revitalize CRASH enforcement patrols;

    (g) failure to accept or cooperate with his supervisor;

    (h) continuing to miss deadlines for written assignments;

    (i) sending a position paper to the Human Services Secretary without his supervisor's review; and

    (j) revising the CRASH manual without his supervisor's review.

this case all involve questions within its area of expertise; thus, we will not lightly overrule the Board's determinations on these matters. Specifically, we will not disturb findings made by the Board unless those findings are clearly erroneous, *In re Muzzy,* 141 Vt. 463, 470, 449 A.2d 970, 973 (1982), and we will normally sustain the Board's order if it is supported by its own findings. *In re Carlson,* 140 Vt. at 560, 442 A.2d at 60.

In reviewing disciplinary actions against state employees, the Board is required to employ a "just cause" standard in determining the appropriateness of the employee's termination. *In re Muzzy,* 141 Vt. at 468-69, 449 A.2d at 972. "Just cause means some substantial shortcoming detrimental to the employer's interests, which the law and a sound public opinion recognize as good cause for his dismissal." *In re Brooks,* 135 Vt. 563, 568, 382 A.2d 204, 207 (1977) (citations omitted). We have recently stated that just-cause analysis should "center upon the nature of the employee's misconduct." *In re Morrissey,* 149 Vt. 1, 13, 538 A.2d 678, 686 (1987). "The ultimate criterion of just cause is whether the employer acted reasonably in discharging the employee because of misconduct." *In re Brooks,* 135 Vt. at 568, 382 A.2d at 207-08.

The primary issue before this Court is whether the Board fashioned an insupportable new test in determining "substantial shortcoming detrimental to the employer's interests." The Board stated that "in looking at substantiality in the context of this case, the proven charges must either indicate deficiencies significantly affecting the operation of the CRASH program or indicate Grievant was unwilling to accept [his superior's] supervisory authority over him." The State alleges that this statement initiates a new legal test of just cause which cannot be upheld on any basis. We disagree.

We believe that the Board's formulation of substantiality is within the letter and spirit of our previous determinations of what constitutes just cause. See, e.g., *In re Gage,* 137 Vt. 16, 20, 398 A.2d 297, 299 (1979) (where state employee previously placed on probation and warned of dismissal as a possible consequence of continuing her habitual absences from work then extended her maternity leave without securing approval from her employer, the casual manner in which she did so was alone just cause for her dismissal). Furthermore, this formulation appears to be in accord with just cause determinations in other states. See, e.g., *Council*

*96* v. *Arrowhead Regional Corrections Bd.,* 356 N.W.2d 295, 297 (Minn. 1984) (just cause specifically relates to and affects administration of office, and must be restricted to something of a substantial nature directly affecting rights and interests of the public; just cause must be one touching qualifications of the officer or his performance of his duties, showing that he is not a fit or proper person to hold office). Finally, these types of formulations are of the very nature which lie peculiarly within the expertise of the Board, and, therefore, we must accord the Board's formulation its due deference. See *In re VSEA,* 143 Vt. at 642, 471 A.2d at 234. See also 3 V.S.A. § 926 (Board has authority to promulgate rules and regulations for the conduct of grievance hearings).

The State argues that the first prong of the Board's substantiality test, job performance deficiencies significantly affecting the operation of the program which is managed by the grievant, requires that a grievant's performance shortcomings be ruled insubstantial as a matter of law unless the State can show that the grievant's program has already been compromised by his actions.[2] The State misconstrues the Board's analysis. The Board's formulation of substantiality was preceded by a discussion of the so-called *"Colleran-Britt"* factors. See *Grievance of Colleran and Britt,* 6 V.L.R.B. 235, 236 (1983). The Board stated that the pertinent factors under this analysis were:

> The nature and seriousness of the offenses and their relation to the employee's duties, positions and responsibilities; the employee's job level; the employee's past work record; the effect of the offenses upon the employee's ability to perform at a satisfactory level; and their effect upon the supervisor's confidence and the employee's ability to perform assigned duties.

Under this analysis, a negative effect on the grievant's program is only one of a number of considerations in determining the substantiality of the detriment to the employer's interest, and not, as the State contends, the sole factor in determining substantiality under the first prong of the Board's test.

The State also argues that the second prong of the Board's substantiality test, unwillingness to accept supervision, is inconsis-

---

[2] Or, as the State formulated it more colorfully at oral argument, "You can't fire the bridge inspector until the bridge falls down."

tent with just cause determinations, because, as the State alleges, if an employee demonstrates that he cannot perform a part of his job, the effect on his employer's interests is just as substantial as if he will not do so. Unfortunately, the State fails to show how this prong of the substantiality test is legally incorrect. The State focuses instead on the allegedly illogical aspects of the Board's findings in employing this part of the test. Employing the previously stated analysis, including the *Colleran-Britt* factors, we find that this prong of the substantiality test is also legally supportable. The Board's allegedly erroneous application of this prong of the test will be dealt with in the next section of this decision.

We conclude that, given the totality of its analysis, the Board did not employ an erroneous legal test in determining substantiality in its just cause determination.

## III.

Next, the State alleges that even if the Board were correct in its substantiality formulation, the Board erred in finding that grievant's failure to accept supervision was unintentional. "[S]o long as the finding is supported by a quantity of evidence which is 'more than a mere scintilla,' " this Court will not reverse the Board's findings unless they are clearly erroneous. *In re Muzzy,* 141 Vt. at 471, 449 A.2d at 973 (quoting *Green Mountain Power Corp.* v. *Commissioner of Labor & Industry,* 136 Vt. 15, 21, 383 A.2d 1046, 1049 (1978)). Such findings must stand even if there exists substantial evidence contrary to the challenged findings. *In re Brooks,* 135 Vt. at 567, 382 A.2d at 207. Grievant's testimony, standing alone, could be sufficient to meet this standard. For example, grievant testified that his failure to comply with his supervisor's request that grievant stop proceeding with "drinking demonstrations" was based upon a misunderstanding as to what constituted a "drinking demonstration." We find, however, that other sufficiently credible evidence also exists to support the Board's findings on this issue, including testimony alluding to personality clashes between grievant and his supervisor leading to communication problems between the two men. We, therefore, must uphold the Board's finding on this issue. See *Chittenden S. Educ. Ass'n* v. *Hinesburg School Dist.,* 147 Vt. 286, 292, 514 A.2d 1065, 1069 (1986).

## IV.

The State also alleges that the Board erred in substituting its judgment for that of the employer. The Board's task in dismissal grievances is the narrow determination of whether the State, as the employer, acted arbitrarily in dismissing grievant. See *In re Brooks,* 135 Vt. at 568, 382 A.2d at 207. In these determinations, the Board must act as a "detached and impartial finder of fact." *In re Muzzy,* 141 Vt. at 471, 449 A.2d at 973. The burden rests upon the State, as the employer, to justify the dismissal of an employee by a preponderance of the evidence. *Id.* at 472, 449 A.2d at 974. In the instant case, the Board employed the proper standard and concluded that the State had not proven, by a preponderance of the evidence, that just cause existed for grievant's dismissal. The Board's conclusion is supported by its findings, and, therefore, will not be disturbed on appeal. See *In re Carlson,* 140 Vt. at 560, 442 A.2d at 60.

## V.

Finally, the State argues that the State was prejudiced by the Board's exclusion of allegedly relevant, probative evidence bearing upon certain issues in the case. We note initially that Board proceedings are not governed by the Vermont Rules of Evidence. 3 V.S.A. § 928(b)(3). Unless the Board "unduly or unfairly restrict[s] the presentation of evidence so as to deprive a party of a meaningful opportunity to be heard," the Board's evidentiary determinations will be upheld. *Fairchild* v. *Vermont State Colleges,* 141 Vt. 362, 366-67, 449 A.2d 932, 934 (1982). See also 3 V.S.A. § 928(b)(6) (parties have right "to present witnesses, give evidence, and examine witnesses" in Board proceedings). Due process concerns, therefore, are the primary factor in reviewing evidentiary determinations made by the Board in grievance procedures. See *In re Morrissey,* 149 Vt. at 10-12, 538 A.2d at 683-85. Also, we presume that the actions of the Board are reasonable, and employ a clear and convincing evidence standard in order to overcome this presumption of validity. *In re Young,* 134 Vt. 569, 570-71, 367 A.2d 665, 666 (1976). In utilizing this analysis, we find that the Board acted correctly in refraining from examining reasons other than those stated in the letter of dismissal, or those delineated in a termination meeting, upon its review of grievant's dismissal. See *In re Morrissey,* 149 Vt. at 11-12, 538 A.2d at 684-85.

Therefore, the Board's exclusion of the State's proffered evidence must be upheld.

*Affirmed.*

----

**Peck, J.,** dissenting. The urgent need to reduce the backlog of decisions already argued before the Court persuades me, almost against my better judgment, to abbreviate my dissent. The result reached by the majority, and the tortuous rationale which supports it, cry aloud for a far more extensive and detailed analysis of the sophisms and other flaws with which the opinion is replete. Excessive activism and a preconceived conclusion are manifest between every line.

Although the majority attempts to downplay *In re Gage,* 137 Vt. 16, 398 A.2d 297 (1979), the opinion here is a clear repudiation of that case and overrules it by implication. The conduct of the grievant in *Gage,* notwithstanding its casual and somewhat arrogant nature was, speaking idiomatically, "small potatoes" when measured by the conduct of the grievant here. Yet, in that case, we did not hesitate to examine the whole record and *reverse* the Board's order which had set aside the dismissal of grievant Gage. The full Court, as then constituted, applying the common sense for which today's majority substitutes arcane legalese, said: "[W]e find from the *record* before us, that just cause for dismissal existed *as a matter of law." Id.* at 20, 398 A.2d at 299 (emphasis added).

*Gage* is a clear precedent for a like reversal here if, for no other reason than that grievant's misconduct was far more serious and extensive. Moreover, two items on the calendar of reasons for grievant's dismissal in the present action, the furnishing of agency material to outside officials and programs without required prior supervisory review and approval, are analogous to certain employee conduct in *In re Morrissey,* 149 Vt. 1, 538 A.2d 678 (1987), acknowledged by this Court as proper grounds for dismissal. Consistent? I think not.

Based on the record, the Board clearly substituted its own preference and judgment for that of the employer. This is a practice we condemned emphatically in *Gage,* 137 Vt. at 19, 398 A.2d at 299. The dismissal procedure, including, inter alia, warnings and

notice, were without fault. The grievant's conduct was intolerable, many-faceted, and fully documented; it was tolerated as long as could be fairly expected of any employer. There is not the slightest evidence that his dismissal was arbitrary in any respect.

Secondly, notwithstanding an attempted disclaimer contained in the opinion, the Board, with the imprimatur of the majority, has established at last what it has been attempting intermittently for years, at least since *In re Brooks,* 135 Vt. 563, 382 A.2d 204 (1977). It is a successful powerplay, establishing entirely new standards for review of dismissals, which will make it unreasonably difficult to terminate even the most incompetent and recalcitrant employees. Indeed, it appears that the new standard is so limiting that job performance has little relevance. For all practical purposes, the Board has arrogated *to itself* the exclusive power to retain or terminate employees, regardless of either conduct or competency. The right of the employer has been reduced to little more than an intermediate step; something, as it were, in the nature of a recommendation.

To say, as the majority does, that this new standard falls within the "letter and spirit" of prior decisions is a statement which, as a matter of *politesse,* I will call inaccurate. It is not justified; this new standard sanctions substitution of judgment. It is an extreme and radical departure from our precedential decisions.

A final observation. The majority notes, very cleverly, that the grievant apparently had no problems with his prior supervisor. Because of the obvious, albeit sly, implication of that comment, I cannot let it pass without notice. Assuming such to be the fact, it is irrelevant to any issue here. Anyone with even a limited experience with personnel work knows very will that there are supervisors and supervisors, with styles and competence as varied as the individuals who act in that capacity. Some actually supervise very little if at all; some will determine employee performance ratings based only on merit; others, simply to be popular or to escape unpleasant confrontations, will grant "excellent" ratings to virtually all subordinates regardless of merit. Some supervisors are more diligent or strict, or both, than others. There is nothing to suggest that grievant's supervisor was incompetent or unfair to him. To suggest otherwise by unsupported innuendo is unworthy of the majority.

In any event, regardless of what may have been a different style of supervision, grievant received notices of his shortcomings and

ignored them. The majority's statement is unfair in its implications and out of place in the opinion.

The record here, as it did in *Gage,* clearly shows the existence of just cause. The dismissal should be reinstated as it has been in our prior decisions in similar cases.

I am authorized to say that Justice Mahady joins in this dissent.