VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      24-AP-116



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

DECEMBER TERM,   2024

In re Grievance of David Roos\*

}  APPEALED FROM:
}  Labor Relations Board
}  CASE NO. 22-34

In the above-entitled cause, the Clerk will enter:

Grievant, a former sergeant with the Vermont State Police (VSP), appeals the Vermont Labor Relations Board's order upholding his termination for misconduct.  On appeal, grievant argues that the State did not prove by a preponderance of the evidence that grievant committed sexual harassment, acted in a manner unbecoming an officer, or was untruthful during the investigation, and that there was no just cause for termination.  We affirm.

The Board made the following findings.  Grievant began employment with the VSP in 2007 as a trooper.  Throughout his employment he received positive performance evaluations.  He was, however, disciplined for misconduct on two prior occasions for failing to enter information about a missing teenage girl into the Amber Alert system and for failing to log into evidence a seized firearm, which went missing and was ultimately recovered from his garage.  At the time of the conduct relevant to this proceeding, grievant was a sergeant supervising other troopers at the St. Johnsbury state police barracks.  He received extensive training on policies, procedures, and rules regarding sexual harassment, discrimination, and unprofessional conduct.  Grievant received the VSP Code of Conduct, which requires officers to answer questions "fully and truthfully" during internal affairs investigations, prohibits discrimination, and prohibits officers from acting in a manner unbecoming an officer.

In December 2021, a coworker filed a complaint with the Office of Internal Affairs indicating that grievant "had potentially sexually harassed three female troopers under his charge."  Internal affairs opened three investigations regarding three different female troopers supervised by grievant.  The troopers described situations in which grievant made sexualized comments, acted inappropriately, and made them feel uncomfortable.  In December 2021,

grievant was suspended from duty. Following an investigation and a Loudermill hearing[1] at which grievant appeared with counsel, the Department of Public Safety terminated grievant in May 2022 for misconduct and gross misconduct. The Department found grievant engaged in sexual harassment against three female subordinates, Troopers P., H., and F., discriminated against one of them based on national origin, engaged in conduct unbecoming a state police officer, and failed to answer questions fully and truthfully during the internal affairs investigation.

Grievant appealed to the Board, which held hearings over several days. The Board heard testimony from several witnesses. Grievant testified and generally denied any wrongdoing. He did not remember some of the instances, and as to other alleged circumstances he explained that no one complained at the time and that he did not intend to make anyone uncomfortable. The Board found that the State proved by a preponderance of the evidence that grievant engaged in sexual harassment, was not truthful in the investigation, and engaged in conduct unbecoming a police officer, but did not meet its burden of proving that grievant discriminated based on national origin.

Based on the evidence, the Board made findings as to each female trooper. In December 2020, Trooper F. ripped her pants while on duty and returned the barracks. Both Trooper F. and another officer present testified that after seeing the ripped pants, grievant commented on Trooper F.'s body and referred to her sister. Trooper F. felt awkward and was offended by grievant's comment. Grievant recalled a comment being made about Trooper F.'s body and an awkward request about whether she had a sister the speaker could date, but claimed the statement was made by someone else. The Board credited the testimony of Trooper F. and the other trooper, finding that grievant made a comment about Trooper F.'s body shape and made reference to her sister.

The Board also credited the testimony of Trooper P. and found that grievant questioned her about her past romantic and sexual experiences with a new recruit. The conversation was in front of other staff, and was inappropriate and offensive. Grievant denied using the term virgin or virginity in the conversation but acknowledged asking about the extent of the relationship.

As to Trooper H., grievant approached her from behind, placed an item in her back pocket, and then removed it. Trooper H. testified that she did not consent to this action. Grievant admitted he placed an item in her pants and then removed it, but believed there was some form of communication or gesture between them. The Board found that grievant's act was unwelcome, offensive, and failed to respect Trooper H.'s autonomy.

The Board concluded that in each instance grievant engaged in unwelcome conduct or actions of sexual nature which unreasonably interfered with the troopers' work performance and created a hostile work environment. Grievant's actions caused all three troopers to avoid him, and his actions interfered with their ability to perform their jobs. Therefore, the Board concluded that grievant engaged in sexual harassment.

---

[1] State employees are entered to a pretermination opportunity to respond to charges of misconduct, similar to a Loudermill hearing. See In re Towle, 164 Vt. 145, 153 (1995) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985)).

The Board also found that grievant was not truthful when discussing the events about Trooper F.'s ripped pants. During the internal affairs interview, grievant claimed it was another officer who made the statement about Trooper F.'s sister. Even after it was clear the other officer was not there at the time, grievant continued to assert that someone else made the comments.

Finally, the Board found that grievant engaged in conduct unbecoming a state police officer because his sexual harassment of his subordinates in front of other employees demonstrated poor judgment, was improper, and negatively impacted their ability to do their jobs.

The Board considered the twelve Colleran factors[2] and concluded that dismissal was a reasonable discipline for the violations. The Board considered grievant's position of trust and authority over the troopers in the barracks, the seriousness of the sexual harassment, his past discipline, his failure to maintain professional boundaries and his poor judgment, the penalty associated with grievant's misconduct, the clarity of the notice prohibiting harassment, and grievant's response of minimizing the incidents. Ultimately, the Board concluded that grievant's actions constituted just cause for dismissal. Grievant appeals to this Court.

Grievant first challenges the sufficiency of the evidence as to each violation. He argues that the testimony of the female subordinates was inconsistent, that no one complained until another female officer met with the women, and that the evidence was insufficient to show that his acts unreasonably interfered with their work performance or created an intimidating, hostile, or offensive work environment. On appeal, "[w]e treat the Board's conclusions with deference, and do not overturn them when they are supported by the findings." In re Brown, 2004 VT 109, ¶ 13, 177 Vt. 365 (citation omitted).

As to the sexual harassment, the evidence supports the Board's findings regarding each trooper. The Board found that grievant sexually harassed Trooper P. by asking whether she lost her virginity to another trooper and at what age. This finding is supported by the testimony of Trooper P. and another trooper who overheard the conversation. In addition, grievant admitted that he asked a series of questions regarding Trooper P.'s first love. While grievant testified that he did not remember asking about Trooper P.'s virginity, the Board acted well within its role as factfinder in crediting other testimony over his. As to Trooper H., the Board found that grievant sexually harassed her by placing an item in her back pants pocket and then removing it. Grievant testified that he removed an item from Trooper H.'s pocket but was careful to retrieve it without making contact with Trooper H. The Board credited Trooper H.'s testimony that she did not consent to this action, and that the action was unwelcome and offensive. Finally, the Board found that grievant sexually harassed Trooper F. by alluding to her body or body shape when commenting on her ripped pants and asking whether she had a sister he could date. Again, although grievant denied making the statement, the testimony of Troper F. and the other trooper present support the Board's findings.

---

[2] To determine the appropriate discipline, the Board has routinely used the factors articulated in a Board decision entitled In re Colleran. See In re Merrill, 151 Vt. 270, 274-75 (1988) (discussing Board's use of factors).

In each instance, grievant emphasizes countervailing evidence, including his own testimony, and asserts that the incidents were innocent misunderstandings, were jokes, did not occur, or were misinterpreted. This Court does not reweigh the evidence on appeal. In re Vt. State Colls. Fac. Fed'n, AFT Loc. 3180, 2019 VT 50, ¶ 47, 210 Vt. 476 (explaining that it is not Court's "role to reweigh the evidence"). The Court "will uphold the Board's findings so long as credible evidence fairly and reasonably supports them," and will reverse "only if the Board's findings of fact are clearly erroneous." In re VSEA, 2014 VT 56, ¶ 22, 196 Vt. 557 (quotation omitted). The evidence supports the Board's findings and there are no grounds to disturb them.

Grievant next argues that the State failed to prove that his conduct fell within the definition of sexual harassment or rose to the level of violating the State's directive regarding sexual harassment. The VSP sexual harassment directive indicates that harassment includes "verbal or physical conduct of a sexual nature" that "has the purpose or effect of unreasonably interfering with an individual's work performance or of creating an intimidating, hostile, or offensive work environment." Grievant contends that the evidence does not support the Board's findings that his behavior unreasonably interfered with the work performance of the troopers involved or created a hostile work environment. He highlights testimony minimizing the impact of his comments and points to the fact that the troopers did not immediately complain about his behavior. The Board's findings were well supported by the evidence, including the troopers' testimony that they were concerned about reporting or complaining about grievant's conduct, and to avoid further interactions they changed their own behaviors, such as avoiding the barracks unless there was a group of people, waiting for a different sergeant to sign paperwork, and not returning to the barracks to use the bathroom.

Grievant also argues that the record does not support the Board's findings that he engaged in conduct unbecoming an officer and that he was untruthful during the investigation. Again, grievant presents his own view of the evidence to support these arguments. Although there may have been conflicting testimony, the evidence supports the Board's finding that grievant engaged in conduct unbecoming an officer by making inappropriate comments and engaging in the sexual harassment of his subordinates as outlined above. As to grievant's untruthfulness, the Board found that grievant was dishonest when he attributed the comments about Trooper F. to another officer. On appeal, grievant claims that he made a simple error in recollection because the interview happened more than thirteen months after the incident, and he lacked advance notice of the allegation. The Board acted well within its role as factfinder in determining that his incorrect statements during the investigation were more than mere forgetfulness, especially given that grievant attributed the statement to a different officer and then continued to claim someone else made the comment even after it was clear that that officer was not present at the time.

Finally, grievant argues that the Board erred in determining there was just cause for dismissal. "To dismiss a state employee, the employer must establish that just cause exists." Brown, 2004 VT 109, ¶ 12. Just cause is "some substantial shortcoming detrimental to the employer's interests, which the law and a sound public opinion recognize as a good cause for his dismissal." Id. (quotation omitted). The Board's role "is limited to determining whether the State met its burden of demonstrating by a preponderance of the evidence that there was just cause for dismissal." In re Jewett, 2009 VT 67, ¶ 23, 186 Vt. 160. To assess the reasonableness of the State's decision, the Board uses twelve factors. See id. (explaining that this Court has

4

"endorsed the Board's use of the factors articulated in <u>In re Colleran</u>, 6 V.L.R.B. 235, 268-69 (1983)").

> These twelve factors are: the nature and seriousness of the offense, the employee's job level and type of employment, the employee's past disciplinary record, the employee's work record, the effect of the offense on the employee's ability to perform satisfactorily, the consistency of the penalty with those imposed upon other similarly situated employees, the consistency of the penalty with any applicable agency table of penalties, the notoriety of the offense or its impact on the reputation of the agency, the clarity of notice, the potential for the employee's rehabilitation, mitigating circumstances surrounding the offense, and the adequacy and effectiveness of alternative sanctions to deter such conduct in the future.

<u>Id</u>. The factors are not exhaustive and may not all be relevant in each case.

Grievant contends that the Board did not properly weigh the factors. Grievant makes his own assessment of the factors, reiterating his version of the allegations. As outlined above, we do not reweigh the evidence on appeal and we accept the Board's assessment of the facts. In addition, grievant claims that the Board should have placed more weight on the good rapport he had with other troopers, taken into account that his prior discipline was remote in time and did not involve sexual harassment, found that there was limited and uncorroborated testimony about the impact of the incidents on the female troopers, distinguished his case from other dismissals for dishonesty that involved more egregious conduct, given more weight to his positive performance evaluations for seventeen years, and taken into account the fact that the events occurred during the pandemic. He also asserts that the Board incorrectly found that grievant blamed the alleged victims.

There was no error. The Board considered the factors in turn. As to the seriousness of the offense and grievant's job level, the Board weighed the serious nature of sexual harassment, grievant's betrayal of his position of trust and authority, and the fact that grievant's subordinates changed their work behavior to avoid interactions with him. The Board noted grievant's positive performance evaluations but found that grievant's past discipline in 2014 and 2018 weighed in favor of termination. The Board found that grievant's failure to maintain professional boundaries and his poor judgment impacted his ability to perform his duties and created a hostile work environment, which weighed in favor of termination. The Board found that termination was reasonable for these offenses, noting that this Court had upheld dismissals for dishonesty and the Board has upheld termination for sexual harassment. The Board also found that dismissal was within the range of penalties for a first offense of sexual harassment, a second offense for conduct unbecoming, and a first offense of untruthfulness. The Board found grievant had clear notice that this type of behavior was not permitted through training and access to policies and procedures. Finally, the Board found there was little potential for rehabilitation given grievant's failure to take responsibility and his attempts to minimize the incidents. The Board noted that the events took place during the COVID-19 pandemic but found that this did not excuse or explain grievant's conduct. Based on this assessment the Board concluded that the State's decision to dismiss grievant was reasonable. Grievant's arguments essentially ask us to

make a second, independent assessment of the factors, which is beyond the standard of review. VSEA, 2014 VT 56, ¶ 22.

As explained above, the Board's findings regarding grievant's misconduct were supported by the evidence, and the Board properly assessed the relevant factors regarding the State's decision to terminate grievant for his misconduct. Therefore, there are no grounds to disturb its decision.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Karen R. Carroll, Associate Justice

_____
William D. Cohen, Associate Justice