## Mutual Benefit Insurance Co. v. Walker

*Craig A. Stone,* for plaintiff.
*Richard C. Angino,* for defendant.

DOWLING, *J.,* February 8, 1984—This is a petition by Mutual Benefit Insurance Company, the no-fault automobile insurer of respondent, Cynthia D. Walker, for a court order under the "Pa. No-fault Motor Vehicle Insurance Act"[1] requiring respondent to submit to a psychological examination pursuant to Section 401 of the Act.[2]

In support of its petition, filed on August 26, 1983, the company asserts that respondent's automobile accident occurred on January 14, 1981. On January 28, 1981, respondent applied for No-fault benefits from the company. Thereafter, Mutual Benefit started to make payments for the physical and psychological injuries she suffered.

Section 401 of the No-fault Act provides, in relevant part, as follows:

"Whenever the mental or physical condition of a person is material to any claim that has been or may be made for past or future basic loss benefits, a court of competent jurisdiction may order the person to submit to mental or physical examination by a physician or physicians. The order may be made only on the motion for good cause shown . . ." 40 P.S. §1009.401 (Purdon Supp. 1983-84).

In Government Employees Insurance Company v. Schroeder, 7 D.&C.3d 786, 788 (1978), the court,

---

1. Act of July 19, 1974, P.L. 489, No. 176, Art. I, §101 et seq., 40 P.S. §1009.101 et seq. (Purdon Supp. 1983-84).

2. In respondent's "Reply" to the petition, respondent asserts that this action cannot be started by petition. Respondent did not brief this issue, but it is clear that a petition is the proper method for an insurer to seek a court-ordered examination under the No-fault Act. See State Farm Mutual Ins. Co. v. Morris, 289 Pa. Super. 187, 436 A.2d 1089 (1981).

court, after reviewing the "good cause" requirement in the context of other cases not involving the No-fault Act, concluded:

"It therefore becomes clear that a showing of "good cause" under Section 401 of the Pennsylvania No-fault Motor Vehicle Insurance Act requires that the moving party demonstrate some special circumstance showing the need for a court-ordered medical examination. The mere allegation that the medical condition of the insured is material to the issue is insufficient to meet this requirement."

The court refused to order the claimants to submit to a medical examination when the insurer asserted only that the claimants' physical condition was material to their claim and that they had refused to submit to physical examinations.

In Nationwide Mutual Insurance Co. v. Johnson, 128 Pitt. L.J. 63, 12 D.&C.3d 65 (1979), the court held that an insurer had not established good cause requiring the claimant to submit to a physical examination when the petition alleged only that the claimant continued to request No-fault benefits for injuries suffered in an auto accident on November 13, 1978[3] and that the claimant's physical condition and the extent of her disability related to the accident were still unresolved. The court stated:

"To establish "good cause shown", an insurer's petition, at the minimum, must contain facts showing that the proofs supplied in support of the claim are inadequate, that the proposed physical examination will substantially assist the insurer in evaluating the claim and that the amount of the claim justifies a court order compelling the claimant to submit to a physical examination." Id. at ____, 12 D. & C. 3d at 70.

---

3. The court's opinion was dated September 10, 1979.

Because no good cause was shown, the petition was denied.

In the instant case, Mutual Benefit's petition asserts that respondent is requesting payment for psychological counseling she alleges is required as a result of the accident. Petitioner, however, does not question the causal relationship between the accident and respondent's psychological problems.[4] It simply alleges as a basis for a court-ordered psychological examination that "petitioner feels that some definitive diagnosis and prognosis is possible at this time as to the respondent's assertion of on-going psychological problems", (Paragraph 11 of the petition) and that "petitioner seeks this evaluation in a good faith effort to determine respondent's current and future condition." (Paragraph 12 of the petition)

In light of the standards set forth in the foregoing cases, petitioner's "good faith" in seeking the examination and its belief that "some definitive diagnosis and prognosis is possible at this time" are insufficient reasons for granting the motion. First, petitioner does not assert that the proofs supplied in support of the claim are inadequate.[5] Second, the insurer does not question the accuracy or veracity of respondent's present therapist.[6] Thus, it does not

4. Hence, the petitioner's position in this case is weaker than the insurer's in Johnson in which the insurer did question the causal relationship but the petition was still denied.

5. In fact, petitioner has attached to its brief in support of its motion as Exhibit "A" a "Treatment Summary", dated November 15, 1982, from respondent's therapist giving her diagnosis, prognosis and estimated time for additional treatment.

6. Although it is not relevant to a determination that no court-ordered examination should take place, it might be noted that an orthopedist retained by petitioner to examine respondent noted in his report at page 3 the following: "Her on-

appear that another opinion will substantially assist the insurer in evaluating the claim. Third, the petition fails to allege the amount of money petitioner has expended to date and how much the claim will cost it in the future.[7]

---

going complaints have so significantly affected her daily activities that she has developed a considerable degree of anxiety in dealing with her difficulties which in my opinion, until improvement of her physical problems can be achieved, will require ongoing psychologic counseling." The physician's report is attached as Exhibit "B" to the petition.

7. Petitioner's brief contains a number of factual assertions not found in its petition. For example, petitioner's brief asserts that the insurer has already spent over $3,000 for respondent's psychological care and that her therapist expects that future care will cost $7,280 before respondent is cured (Petitioner's Brief at P. 2). Even if these allegations are considered, the amount of the claim is only one factor in the determination. Since petitioner has failed on the others, and the No-fault Act provides for unlimited payments for medical expenses, see 40 P.S. § 1009.202, the amount of the claim by itself should not justify a court-ordered medical examination.

Petitioner also makes much of the fact that respondent did not begin her counseling until April 27, 1981, (Petitioner's Brief at P. 4), some three months after the accident on January 15, 1981. This fact would be relevant to a claim that respondent's psychological problems are not related to the accident but petitioner, as already noted, makes no such claim.

Additionally, the Johnson case, supra, cited by petitioner in support of its argument on the lapse of time before psychological treatment was started, is factually inapposite. There claimant received no-fault payments for physical injuries, did not receive payments for a year, and then made a claim for more medical expenses allegedly arising from the same accident. In the instant case, the psychological treatments were begun shortly after the accident, insurer willingly paid them, and respondent is making a continued claim for payment of her psychological counseling.

Finally, petitioner's brief asserts that "there is no projected end to the treatment". (Petitoner's Brief at P. 5) Re-

Petitioner thus appears to be seeking an examination simply as a matter of course. Such examinations are not contemplated by the No-fault Act. Government Employees Insurance Company v. Schroeder, 7 D.&C.3d 786 (1976).

Accordingly, we enter the following

## ORDER

And now, this February 8, 1984, petitioner's petition for medical examination is dismissed.

---

spondent's therapist's report rebuts this statement by projecting an end to therapy in November 1984. (Exhibit "A" to Petitioner's Brief)