### In re Grievance of Daniel Swainbank

[433 A.2d 313]

No. 69-80

Present: Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.

Opinion Filed July 15, 1981

*Michael R. Zimmerman,* Montpelier, for Petitioner.

*M. Jerome Diamond,* Attorney General, and *Bennett Evans Greene,* Assistant Attorney General, Montpelier, for Respondent.

Barney, C.J. The State appeals from an order of the State Labor Relations Board allowing the grievance of Daniel Swainbank and reversing his suspension from work for five days without pay at the St. Albans Correctional Facility. The basic facts in this case are not in dispute. On June 26, 1979, Swainbank, a correctional officer, was assigned to drive the Facility's van to transport a prisoner, Zera, to Kerbs Hospital in St. Albans. Zera had received injuries in a fight with another prisoner at the Facility. Two other officers accompanied Swainbank and Zera. During the entire time Zera was restrained by handcuffs.

Upon arrival at the hospital, Zera was taken to the emergency room, where a doctor examined him and advised the officers that he wished to hold him overnight at the hospital. Swainbank and a lieutenant then returned to the Facility to get the other inmate involved in the altercation to bring him to the hospital. Upon returning to the Facility, Swainbank's commanding officer gave him some leg irons and told him to use the leg irons to secure Zera to his hospital bed, then to remove the handcuffs from him.

Upon arriving at the hospital, Swainbank went to Zera's hospital room, where he found him sitting in a chair, without handcuffs, and one of the other officers standing nearby. A nurse was taking Zera's blood pressure. As Swainbank entered the room, Zera asked if he could have a "coke." Swainbank went to get him one. Upon returning to the room, Swainbank saw Zera, without handcuffs, leaning against the crashbar of the emergency exit door. When Zera saw Swainbank, he immediately bolted out through the emergency exit door.

Swainbank and the other officer chased him. The other officer soon fell behind, not being in good physical condition.

At a certain point Zera stopped, turned and faced Swainbank and the other officer, assumed a combative stance, and invited a fight. Swainbank attempted to reason with him instead, and eventually coaxed him into returning to the hospital. Swainbank, the other officer, and Zera started walking back to the hospital. During the walk back, Zera was not restrained. The other officer had lost the handcuffs which had originally been on him and Swainbank did not place or attempt to place the leg irons on him. As they neared the hospital, Zera again bolted. Swainbank and the other officer pursued him, but he eventually disappeared.

As a result of this incident, Swainbank received a notice of his suspension for five days without pay. The reasons his superior gave were:

> 1. Violation of Rules and Regulations of this facility, 200.1, page 1; to wit, "No employee or volunteer shall disobey the direct order of a superior." You admitted that you were told by Lt. Pelton that, "I heard him say that I was to go back to the facility, get the leg irons, return to the hospital, chain him up to the bed with the leg irons, and then remove the handcuffs." After arriving back to the hospital with the leg irons, you failed to utilize the leg irons in any manner. In fact, inmate Zera was without benefit of any restraints.
>
> 2. Violation of Rules and Regulations, 200.1, page 2; to wit, "No employee shall engage in any type of behavior or lack of behavior which constitutes negligence and/or endangers the safety of staff or resident." You did not again apply the leg irons that you had in your back pocket when you first stopped inmate Zera in back of the hospital.

After unsuccessfully following the contract grievance procedures, Swainbank appealed to the State Labor Relations Board. The Board reversed the suspension, and allowed the grievance. The State has appealed, and the Board certified the following questions to this Court, as was then required by V.R.A.P. 13(d):

> 1. Did the Board err in allowing the grievance of Correctional Officer Daniel Swainbank against the Vermont Department of Corrections?

2. Did the Board err in finding that the reasons for suspension of Correctional Officer Swainbank stated in the letter of suspension did not conform to the evidence?

3. Did the Board err in failing to uphold the suspension when the Board found that (a) Correctional Officer Swainbank was highly irresponsible and guilty of negligence which would warrant discipline; (b) he was put on notice (that the letter of suspension included that charge of negligence) by the State's Answer to his grievance; and (c) the grievant (Correctional Officer Swainbank) would not be prejudiced by the Board's upholding of the suspension?

4. Did the Board err in finding that the order, of [sic] which Swainbank was accused of disobeying, was impossible to obey?

5. Did the Board err in finding that Swainbank was not negligent in failing to apply leg irons to his escaped prisoner when he apprehended the prisoner?

The Board held that Swainbank had not disobeyed a direct order, in that literal compliance with the order was impossible. The Board noted that a charge of disobeying an order is a grave charge. It felt that, to sustain the charge of disobedience, either proof of intentional defiance or proof that the employee deliberately substituted his judgment for that of his superior in circumstances where it was unreasonable to do so was required. The Board then noted that the order required Swainbank to place the leg irons on Zera and then remove the handcuffs from him. Zera's handcuffs had already been removed when Swainbank got to the hospital room, however. The Board concluded that he therefore could not place the leg irons on Zera, *and then remove the handcuffs*. The Board went on to say that Swainbank had been arguably negligent in the hospital room incident, but that he had only been charged with disobeying an order in that episode, not negligence.

Even given the standard which the Board adopted for finding a disobedience, we cannot agree with its decision that the order was impossible to carry out. The clear import of the order was to place the leg irons on Zera. Swainbank could have done so, but did not. The fact that Zera did not have handcuffs on did not prevent him from doing so. In failing to

place the leg irons on Zera, Swainbank deliberately substituted his own judgment for that of his superior. His possible fear of Zera did not negate his duty to follow the order. He was a prison guard; it was his job to restrain prisoners. More importantly, another officer was in the room, and another officer was available outside the hospital for help. It cannot reasonably be said that it was impossible for him to follow the order. The evidence simply does not support the Board's finding.

The Board also concluded that Swainbank was not negligent in failing to place the leg irons on Zera when they were in the meadow. That conclusion is supportable.

Zera was powerfully built and had been involved in many altercations with prisoners and officers while at the Facility. Swainbank had only a tired and out of shape guard to assist in apprehending Zera. Zera seemed to be responding to reason in being coaxed back to the hospital. Finally, Zera would have had a difficult time walking back to the hospital with the leg irons on. The Board could properly find that, under those circumstances, Swainbank was not negligent in failing to place the leg irons on the prisoner.

Nevertheless, because we find that the Board's conclusion that the order was impossible to carry out is not supportable, we must overturn the Board's allowance of the grievance. The issue of the severity of the discipline was raised by the Board during the hearing, but not reached by it because it reversed the suspension. We will remand the cause for the Board's determination on that issue.

*The first, second and fourth questions are answered in the affirmative. The fifth question is answered in the negative. An answer to the third question is not required under the disposition of this case. The order of the Board allowing the grievance is reversed and the cause remanded for a hearing consistent with the views expressed herein.*