## Grievance of William Graves

[520 A.2d 999]

No. 84-314

Present: **Allen, C.J., Hill, Peck and Gibson, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed December 12, 1986

*Susan M. Dole* and *Michael R. Zimmerman*, VSEA, Montpelier, for Plaintiff-Appellant.

*Jeffrey L. Amestoy*, Attorney General, and *Michael Seibert*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Hill, J.** This case concerns the dismissal of the grievant, William Graves, from his position as a tax field examiner with the Vermont Department of Taxes (Department). In May of 1983, the State dismissed grievant from his job for "gross misconduct" in the form of "repeated falsification of his expense claims for noon meals." Mr. Graves then filed a grievance with the Vermont Labor Relations Board (Board) contesting his dismissal. See 3 V.S.A. § 926. The Board dismissed the grievance, and grievant appealed to this Court. We affirm.

Prior to his discharge, grievant had been employed for approximately one year with the Department. Prior to his employment with the Department, he had held two other positions in the executive branch for a period of approximately ten years. As a supervisor in both of those positions, grievant had the responsibility of evaluating and approving expense reimbursement claims of subordinates. Through this work as a supervisor, grievant became familiar with the State's rules governing reimbursement of expenses.

Grievant's work with the Department involved conducting field investigations and examinations of businesses throughout the state to determine correct tax liability. Due to the requirement that he travel out of Montpelier to conduct investigations, he was regularly entitled to mileage and lunch expense reimbursement.

Under Article Forty of the collective bargaining agreement in effect during the relevant period, grievant was entitled to a maxi-

mum noon meal reimbursement of $3.95. During the course of his employment with the Department, however, it was grievant's regular practice to claim the maximum reimbursement for noon meals regardless of his actual expenses. In August of 1982, grievant's supervisor refused to approve two of his reimbursement claims for lunch because they had eaten together, and the claims had exceeded the actual costs of the lunches. Grievant was asked to resubmit these two claims, and they were honored. In April of 1983, grievant's superiors became aware that he might be claiming excessive reimbursements, and after investigating their suspicions, confronted grievant in a May 9, 1983 meeting with the evidence they felt confirmed their suspicions. Grievant was thereafter discharged on May 24, 1983, on the basis of fourteen alleged instances of overcharging the State for noon meal expenses.

On the Board's review of grievant's dismissal, it found that grievant "intentionally and dishonestly submitted excessive false claims for reimbursement for his lunches" on 10 days between the dates of March 29, 1983 and May 2, 1983. The Board found that this conduct constituted "just cause" for discharge of grievant and that the State was justified under the circumstances in bypassing the progressive discipline provisions of the collective bargaining agreement.

## I.

Grievant first argues that the State was precluded from discharging him without first suspending his right to reimbursement for noon meals. Grievant relies on a provision in a Standard Operating Procedure (SOP) officially adopted by the Department in 1979, entitled "Regulations for Reimbursement of Personal Expenses." This SOP indicates that only "actual and necessary expenses . . . will be reimbursed." It also provides that:

> (6) An appointing authority *shall* revoke midday meal reimbursement privileges where there is continuing indication of abuse (emphasis added).

Article Four, section six of the applicable collective bargaining agreement, however, provides that:

> 6. An appointing authority *may* revoke midday meal reimbursement privileges where there is continuing indication of abuse (emphasis added).

Grievant's argument is that because the State, as employer, adopted the SOP, and notified grievant of this written departmental procedure, the SOP provides the applicable disciplinary procedure in this type of case. Moreover, according to grievant, assuming the SOP controls, it requires the State, in a case like this, to revoke reimbursement privileges before it can employ the more harsh disciplinary option of discharging the employee. Grievant hinges this argument on the use of the word "shall" in the SOP in contrast to the use of the word "may" in the contract.

The Board rejected this argument, relying on this Court's decision in *In re Muzzy*, 141 Vt. 463, 449 A.2d 970 (1982). In *Muzzy*, we held that where the language of a collective bargaining agreement is clear and unambiguous, employment rules and regulations promulgated unilaterally by the employer-state which conflict with the contract terms are superseded by the contract. *Id.* at 476, 449 A.2d at 976. The Board correctly concluded that *Muzzy* requires resolution of this issue in favor of the employer.

In *Muzzy*, the Board had followed and applied the employer's unilaterally promulgated rules which allowed the employer to bypass progressive discipline provisions in a case of dismissal for inability to perform. We held there that because the clear and unambiguous terms of the collective bargaining agreement made the progressive discipline procedure applicable to all types of discharges, it was error for the Board to give effect to the rules and regulations. *Id.* The grievant in the instant case requested the Board, and now requests this Court, to engage in the type of contract interpretation we specifically forbade in *Muzzy*. As was the case with the employer rules involved in *Muzzy*, the SOP of the Department, if found controlling, would be more restrictive of employee rights than the conflicting provision of the collective bargaining agreement. Clearly, if the SOP controls, the employer is required to suspend reimbursement privileges when abuse is evident. Under the contract, however, an employer "may" suspend this privilege, but is not required to.

■ Grievant attempts to distinguish *Muzzy* by arguing that, under its interpretation of the meaning of the SOP, it is more protective of employee rights than the contract, thus making the

principle of *Muzzy* inapposite. Grievant's argument is unpersuasive. The SOP nowhere states that the employer must suspend reimbursement privileges *before* it can discharge an employee. The plain meaning of the words of the SOP provide no basis for grievant's interpretation. Our duty is to interpret disputed contract language, not "remake it, or ignore it." *In re Vermont State Employees' Association Inc.*, 139 Vt. 63, 65, 421 A.2d 1311, 1312 (1980).

II.

Grievant next challenges the Board's conclusion that there was just cause for his immediate dismissal. Specifically, he argues that the employer improperly bypassed the progressive discipline procedure generally required by the contract.* We have previously held that "whether the State properly bypassed progressive discipline . . . is an issue of fact, committed by the legislature to the Board for *its* determination . . . ." *In re Muzzy*, 141 Vt. at 476, 449 A.2d at 976. The Board concluded that "[g]rievant's dishonesty, engaged in time and again at public expense, justifies dismissal as a reasonable discipline. Surely, if any case is 'appropriate' for 'bypassing progressive discipline," it is this one. Dismissal is certainly justified by a pattern of fraud. Grievant's repeated acts of dishonesty constitute gross misconduct, as charged in his dismissal letter." This Court will not disturb the findings of the

---

* Article Fifteen, section one of the collective bargaining agreement provided:

> 1. The parties jointly recognize the deterrent value of disciplinary action. Accordingly, the State will:
>
> a. act promptly to impose discipline within a reasonable time of the offense;
>
> b. apply discipline with a view toward uniformity and consistency; and
>
> c. impose a procedure of progressive discipline, in increasing order of severity:
>
> i. oral reprimand;
>
> ii. written reprimand;
>
> iii. suspension without pay;
>
> iv. demotion;
>
> v. dismissal.
>
> The parties agree that there are appropriate cases that may warrant the State bypassing progressive discipline or applying discipline in differing degrees so long as it is imposing discipline for just cause.

Under section three of the same Article, an employee may be dismissed immediately, bypassing progressive discipline, for "gross misconduct."

Board unless they are shown to be clearly erroneous. *In re Brooks*, 135 Vt. 563, 567, 382 A.2d 204, 207 (1977).

It is well settled in Vermont that "[a] discharge is for 'just cause' if, (1) it is reasonable and, (2) the employee had fair notice, express or fairly implied, that such conduct would be ground for discharge." *In re Carlson*, 140 Vt. 555, 559, 442 A.2d 57, 59 (1982) (citing *In re Brooks*, 135 Vt. at 568, 382 A.2d at 207-08). There was ample evidence in the record to support the Board's conclusion that both elements of the just cause standard were satisfied in this case.

First, "the grievant's dishonesty, indulged in time and again at public expense, justifies dismissal as a reasonable discipline." *Id.* at 559, 442 A.2d at 59. Grievant invites us to create a de minimus exception to this principle because his false reimbursement claims in this case totaled only $12.69, whereas the grievant in *Carlson* had defrauded the State of "substantial amounts." *Id.* We reject grievant's argument because the honesty an employer is entitled to expect of employees cannot and should not be measured in monetary terms.

Second, it is clear that the fair notice requirement has also been satisfied. We stated in *Brooks* that the governing standard is "whether the conduct was or should have been known to the employee to be prohibited by the employer." *In re Brooks*, 135 Vt. at 568, 382 A.2d at 208 (citation omitted). In this case, the grievant had express notice that his practice of claiming maximum lunch reimbursement was prohibited by his employer. In August of 1982, only several months before the incidents leading to his dismissal, a Department supervisor had disapproved grievant's claims for lunch reimbursement for two days because they were in excess of what he actually spent. Moreover, we have previously stated that "[h]onesty is an implicit duty of every employee," *In re Carlson*, 140 Vt. at 560, 442 A.2d at 60, so that notice that fraud is proscribed can never be vitiated. Under these circumstances, grievant had ample notice, both express and implied, that his conduct was grounds for dismissal.

*Affirmed.*