# Grievance of Raymond Gadreault

[564 A.2d 605]

No. 85-253

Present: Allen, C.J., Peck and Gibson, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned

Opinion Filed July 14, 1989

*Biggam & Fox*, Montpelier, for Plaintiff-Appellant.

*George Brooks*, Montpelier, for Defendant-Appellee.

**Allen, C.J.** Grievant appeals from an order of the Vermont Labor Relations Board (Board) affirming his dismissal from employment as a correctional officer. We affirm.

Grievant was continuously employed as a correctional officer at the St. Johnsbury Community Correctional Center (SJCCC) from April 1980 until his dismissal, effective May 29, 1984. At all times relevant to this appeal, grievant was a permanent-status employee. Prior to the performance evaluation forming the background of this appeal, grievant had been consistently evaluated as unfailingly meeting the standards and requirements associated with his position, an overall rating of "3" on a scale of one to five.

On February 23, 1984, grievant received a performance evaluation covering the time period between February 3, 1983 and February 3, 1984. This evaluation, unlike his earlier ones, gave grievant an overall rating of "2," or not consistently meeting his job requirements or standards. The evaluation cited several incidents as evidence of grievant's poor judgment, including unauthorized work crew stops, threatening to kill the assistant superintendent, ordering an inmate to clean a garbage can in the inmate shower, failing to submit a work crew time report and backing a van over an embankment without reporting the incident. Grievant was placed on probation for six months, effective on the date the evaluation was reviewed with him. Issues to be addressed during the probationary period included his communication with the supervisory staff, timely filing of required reports, appearance, rapport with peers and inmates and compliance with all rules set forth in the SJCCC Facility policies and procedures.

Along with the performance evaluation, grievant also received a letter from the SJCCC superintendent informing him that he was being placed in a six month warning period during which time he was obligated to meet on a monthly basis with the chief of security and operations regarding his performance. Both the performance evaluation and the warning letter were presented to grievant at a meeting with his supervisors and "[a]s a result of the meeting, Grievant understood that if he did not live up to management's expectations ... he could be dismissed."

Three months later, grievant was presented with a letter dismissing him from employment, effective May 29, 1984, "for accumulated incidents of misconduct since [his] last performance evaluation, which demonstrate a serious lack of professional judgment." Incidents cited in the letter as a basis

of grievant's dismissal included three episodes of co-worker harassment, one of which involved sexual harassment, his refusal to give an inmate a towel and to follow a supervisor's instructions, and finally several telephone calls to Boston, characterized by the letter as " 'misuse of State property, theft of services, neglect of duty' and in violation of SJCCC Rules and Regulations #3, 6, 14 and 26." The letter also noted grievant's failure to improve in three of the five areas which were to be addressed during his probationary period.

Along with the dismissal letter, grievant received a "separation performance evaluation" listing as additional, and admittedly more minor, grounds for his dismissal a variety of events occurring during the period between February 3, 1984 and May 2, 1984. In the letter, the Board described these incidents as revealing "a general pattern of poor judgment, neglect of duty, and [an] inability or unwillingness to conduct [oneself] in an appropriate manner toward other staff."

The Board concluded that while most of the charges against grievant had been established by the employer, some of the charges were not supported by the evidence. The Board determined, however, that most of the events charged had occurred and that "[g]rievant's relatively 'minor' derelictions accumulated to the point where he became an undependable employee who was unable to sustain an effective working relationship with his peers and supervisors." According to the Board, grievant's dismissal was for just cause and not inappropriate or excessive in light of the circumstances.

On appeal, grievant argues that: (1) he lacked fair notice that his conduct would be grounds for discharge, (2) his employer violated the terms of his warning period, and (3) the Board's conclusion that he was dismissed from employment for just cause lacks a reasonable basis in its findings.

I.

Grievant argues first that he never received prior warning that his conduct was placing his job in jeopardy, on the theory that it was only after the February 23, 1984 performance evaluation that he received fair notice that certain conduct would be grounds for dismissal, while the May 25, 1984 dismissal letter relied on events occurring after the close of the evaluation period on February 3, 1984 but before his

evaluation conference on February 23, 1984. His argument fails for two reasons. First, most of the grounds relied on by the Board related to events occurring after February 23, 1984. Second, the Board's reliance on events before that date was not improper.

Of the events stated in the dismissal letter itself, two clearly occurred after February 23, 1984; a sexual harassment charge on April 21, 1984 and harassment of a co-worker on April 25, 1984. The date of a third event—threats against a co-worker who was allegedly writing reports unfavorable to grievant—occurred "approximately three months" prior to the date of the letter, which would have been shortly before or shortly after February 23, 1984. Of the twelve incidents documented in the final evaluation report, covering the period between February 3, 1984 and May 2, 1984 and incorporated by reference into the dismissal letter, seven were alleged to have occurred after the February 23, 1984 evaluation conference and five between the end of the evaluation period, February 3, 1984, and the date of the conference. Four of the post-conference events, and part of a fifth, were found not to be violations, leaving two post-conference incidents and part of a third, in addition to the two, and possibly three, post-conference incidents enumerated in the dismissal letter itself. Even if the pre-February 23, 1984 events are disregarded, the remaining incidents are sufficient in number and seriousness to sustain the decision below.

The essence of the letter dismissing grievant was his general pattern of poor judgment, neglect of duty, and inappropriate behavior toward other staff. Assuming arguendo that only the post-February 23, 1984 events were relevant, it would be grievant's burden to demonstrate that the charges remaining, that were alleged to have occurred after that date, were insufficient to support the decision of the Board and that its judgment was clearly erroneous. *In re Carlson,* 140 Vt. 555, 560, 442 A.2d 57, 60 (1982). Grievant argues that none of the incidents were serious, but he does not demonstrate that the Board erred in regarding the totality of the incidents to warrant dismissal.

■ Moreover, the Board was correct in considering the events after the close of the evaluation period but before the evaluation conference on February 23, 1984. Had the evalu-

ation been the first signal of conduct which was otherwise unwarned, these intervening incidents could not have been chargeable to grievant until he was made aware that such conduct would jeopardize his position. But the incidents at issue, such as abuse of the telephone system and failure to properly report a suicide threat, were clear violations when they occurred. As we stated in *In re Brooks*, 135 Vt. 563, 568, 382 A.2d 204, 208 (1977), the governing standard is "whether the conduct was or should have been known to the employee to be prohibited by the employer."[1] Grievant's theory, if adopted, would immunize conduct in the period between the end of the evaluation year and the evaluation conference. Such a result is unwarranted.

## II.

▮ Grievant next argues that the terms of his "six-month" warning period were violated when he was dismissed after only three months of the period had passed. The warning notice, however, is not a guarantee of employment for the warning period. Grievant's post-warning conduct resulted in five incident reports in about nine weeks, and the employer was free to terminate grievant at any point when just cause to do so could be demonstrated and the dismissal was clearly reasonable. See *In re Graves*, 147 Vt. 519, 524, 520 A.2d 999, 1002 (1986).

## III.

▮ Grievant finally argues that the Board's finding of "just cause" for his dismissal lacks a reasonable basis in the findings, since most of the incidents alleged were trivial and none of these "minor derelictions" were the basis for formal disciplinary action. We have previously held that "[i]nstances

---

[1] The State points out that each of the incidents violated a specific correctional center personnel rule, including Rule 3 (prohibiting nonproductive activity and unnecessary use of the telephone), Rule 4 (prohibiting unauthorized absence from a work station), Rule 14 (prohibiting the willful violation or disregard of any written correctional center regulation or policy), Rule 15 (prohibiting negligent conduct and conduct endangering the safety of residents or staff), and Rule 26 (prohibiting use of the state telephone system for long distance personal business). The Board specifically found that grievant, who had been employed at the correctional center since 1980, was aware of the personnel rules.

of repeated conduct insufficient in themselves may accumulate so as to provide for just cause for dismissal." *In re Gage,* 137 Vt. 16, 18, 398 A.2d 297, 298 (1979). Here the Board relied on a pattern of disruptive conduct, and grievant has not demonstrated that the Board's findings were clearly erroneous.

■ Nor did the employer's failure to impose each step in the progressive "ladder" of disciplinary action set forth in the employment contract result in a violation of grievant's rights. The Board found that grievant received oral reprimands and was once suspended without pay, steps one and three in the disciplinary "ladder." While he was not demoted, in accordance with step four, he was placed in a formal warning period, with very specific parameters for future conduct. Though demotion did not precede firing, grievant cannot say that termination came without ample warning.[2] *Brooks,* 135 Vt. at 569, 382 A.2d at 208 ("progressive discipline is not inherent in the concept of just cause").

*Affirmed.*

---

[2] Article 15 of the employment agreement provides for "appropriate cases that may warrant the State bypassing progressive discipline or applying discipline in differing degrees *so long as it is imposing discipline for just cause.*" (Emphasis added.)