*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-056

AUGUST TERM, 2016

| | | |
|---|---|---|
| Karla Riendeau | } | APPEALED FROM: |
| | } | |
| | } | Employment Security Board |
| v. | } | |
| | } | |
| Department of Labor, | } | DOCKET NO. 11-15-014-10 |
| State of Vermont | | |

In the above-entitled cause, the Clerk will enter:

Claimant Karla Riendeau appeals from an Employment Security Board decision that she was disqualified from benefits under the provisions of 21 V.S.A.§ 1344(a)(2)(A) because she left her employment "voluntarily without good cause attributable" to her employer, the Vermont Department of Corrections (DOC). Claimant contends the Board's decision "lack[ed] support in the record." We affirm.

The facts may be summarized as follows. Claimant was employed by DOC as a correctional officer for approximately fifteen years. She had been formally disciplined by DOC for issues relating to tardiness or leave time in February 2012, September and November 2014, and March 2015. In June and July 2015, DOC issued separate "Loudermill" letters to claimant informing her that she would be afforded an opportunity to respond to additional allegations of tardiness.[1] A third such letter was prepared by DOC in August 2015, alleging that claimant had arrived late to work on August 1, 2015 without providing notice, and late to a training session on August 5, 2015 in which she was the trainer. Although the copy of the August 2015 letter entered into the record was not dated or signed, claimant acknowledged that she had received it. The

---

[1] Based on the procedural safeguards for employees with a property interest in their continued public employment mandated by the U.S. Supreme Court in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 534 (1985), the purpose of a Loudermill letter is to provide the employee with "notice of the charges, an explanation of the evidence, and an opportunity for the employee to present evidence." In re Hurlburt, 2003 VT 2, ¶ 29, 175 Vt. 40.

record also reflects that claimant and Bob South, a union representative from the Vermont State Employees Association, attended a hearing on some or all of the charges in September 2015.

Later that month, the DOC prepared a letter, dated September 29, 2015, informing claimant that she was being placed on a temporary, paid leave for up to thirty days to permit the State to conduct and complete an investigation into allegations of misconduct. Claimant testified that she did not receive the letter, although she also testified that she did not return to work after September 28, 2015. The Board found that claimant's union representative told her that if she appeared at work on her next scheduled day she would be escorted off the premises as she was being temporarily relieved from duty.

Both claimant and South recalled that, in late September 2015, they discussed claimant's options. As the Board here found, "South saw [claimant's] options as obtaining a stipulated separation from the employer, resigning, or being terminated."[2]

The union and DOC then negotiated a proposed stipulated agreement, which claimant received on October 22 or 23, 2015. Prior to that, however, claimant had indicated to the State that she intended to resign. The proposed separation agreement provided, among other things, that claimant would resign from her position effective September 30, 2015; that at no time in the future would claimant apply for or accept employment with DOC in any capacity; that claimant would not file any grievance; and that, "[i]n the event [claimant] applies for unemployment compensation benefits, DOC agrees it will not contest said application" while claimant "understands and agrees that this provision shall not be construed or interpreted as a guarantee that unemployment benefits will be awarded to her." Claimant opted not to sign the stipulation, and submitted a separate written letter of resignation, dated October 23, 2015. In her letter, claimant indicated that "the decision to resign was made on September 30, 2015."

In response to claimant's subsequent application for unemployment benefits, a claims adjudicator determined that claimant was disqualified under the provisions of 21 V.S.A. § 1344(a)(2)(A) because she left her employment voluntarily without good cause attributable to her employer. Claimant appealed the determination. Following a hearing, an administrative law judge issued a written decision sustaining that decision.[3] The ALJ observed that the "question to be resolved" was whether, in deciding to resign, claimant "had a reasonable choice." In resolving

---

[2]  South testified in this regard that he informed claimant the State was "looking to terminate" her, and that she had "three options": they could "work[] out a stip" or "you can resign anytime you want or they were going to terminate you." Claimant testified similarly that her understanding from South was that DOC was "looking to terminate me, period. They wanted me gone." She recalled that she asked South if she had the option of returning to work, and he responded, "You aren't going to be able to work. You can either—if you don't resign or sign the stipulation, you will be terminated, period."

[3]  Claimant represented herself at the hearing. She subsequently retained counsel, who represented her before the Board and in this appeal.

2

this question, the ALJ rejected the argument that claimant's only options were returning to work only to be escorted from the premises, or resignation. The ALJ found that claimant "could of simply not gone to work, served out the temporary relief from duty or administrative leave, and seen what the outcome would be." Accordingly, the ALJ concluded that claimant had not shown that she left her employment due to any conditions attributable to her employer, and sustained the claims adjudicator's ruling.

Following a hearing, the Board issued a written ruling sustaining the ALJ's decision. In its key conclusion, the Board similarly rejected claimant's assertion that she was confronted with no choice but to resign, observing that "[t]he argument fails to address the other alternative available to the claimant, which was that she could have continued to contest the charges against her while exploring other options that may have been available to her prior to termination." The Board further explained that the claimant made a conscious decision to voluntarily resign rather than continue to contest the disciplinary charges against her. The disciplinary action was based on numerous incidents of well-documented tardiness, most of which the claimant conceded. Noting that it is entirely within an employer's rights to discipline its employees for unexcused tardiness, the Board concluded that the employer's conduct here was not the sort that would justify an award of benefits for voluntary resignation. This appeal followed.

Claimant contends the Board based its decision on "speculation utterly lacking support in the record." More specifically, claimant asserts that the "supposition that she could negotiate a better deal" than the proposed stipulation finds no support in the record, and that the record shows she "had only one reasonable option, which was to resign . . ." Claimant notes her testimony that she had not received the DOC letter informing her that she had been placed on administrative leave pending a resolution of the charges and asserts that she did not understand that there was an ongoing process that might have led to a result other than her termination.

"Our review of decisions by the Employment Security Board is deferential, as decisions within the expertise of the Board are presumed to be correct, valid, and reasonable. We will uphold the Board's findings of fact unless they are clearly erroneous, and its conclusions if they are supported by the findings. In general, we also defer to the Board's interpretation of the statutes it is charged with administering." Kelley v. Dep't of Labor, 2014 VT 74, ¶ 6, 197 Vt. 155 (citations and quotations omitted).

The question on appeal is not whether claimant resigned—that she did is well supported by the record. The issue here is whether she voluntarily quit "without good cause attributable such employing unit." 21 V.S.A. § 1344(a)(2)(A). We have long recognized that a termination from employment may not meet the disqualifying standard under 21 V.S.A. § 1344 where the employee was given no reasonable "alternative to resignation." Lane v. Dep't of Emp't Sec., 134 Vt. 9, 11 (1975). Indeed, in Vennell v. Dep't of Emp't Sec., "[w]e recognize[d] that, given certain facts, a resignation under a quit-or-be-fired offer may be involuntary," although we rejected that characterization where the claimant had resigned under threat of dismissal due to a conviction for possession of marijuana. 141 Vt. 282, 283 (1982); see also Quick v. Dep't of Labor, 2009 VT 121, ¶ 8, 187 Vt. 585 (mem.) (rejecting employee's claim that her resignation was involuntary

3

where she had "assumed" she would be fired if she refused polygraph but Board found that claimant quit because she was "offended by employer's suggestion that she was lying"). In this case, the Board concluded that employer's initiation of proceedings to terminate claimant on the basis of numerous instances of well-documented tardiness was within its rights, and that claimant opted to unconditionally resign rather than see that process through to its conclusion. Although claimant's prediction of the outcome of that process may be well-founded, the Board's conclusion that her decision not to see the process through does not amount to "good cause attributable to" the employer is supported by its findings and within the Board's discretion.

Affirmed.

BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
Beth Robinson, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice

4